Andrew J. Levander (*pro hac vice*)
Neil A. Steiner (*pro hac vice*)
David A. Kotler
Angela M. Liu (*pro hac vice*)
Carla G. Graff
Stormie B. Mauck (*pro hac vice*)
DECHERT LLP
Three Bryant Park
1095 Sixth Avenue
New York, NY 10036
Tel: (212) 698-3500
andrew.levander@dechert.com
neil.steiner@dechert.com
david.kotler@dechert.com
angela.liu@dechert.com
carla.graff@dechert.com
stormie.mauck@dechert.com

*Attorneys for Defendants Bradley M. Weston and Todd E. Vogensen*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RYAN SHULMAN, individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> BRADLEY M. WESTON and TODD E. VOGENSEN, <br><br> *Defendants*. | Civil Action No.: 2:23-cv-04121-JXN-CLW <br><br> **Motion Day: November 4, 2024** <br><br> **ORAL ARGUMENT REQUESTED** |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................2

    I.     PLAINTIFF FAILS TO PLEAD AN ACTIONABLE
          MATERIAL MISSTATEMENT OR OMISSION ...............................2

         A.    Defendants' Statements Concerning Liquidity Are Not
              False ........................................................................................2

         B.    Defendants' Forward-Looking Liquidity Statements Are
              Protected By The Safe Harbor .....................................................5

         C.    Defendants' Opinion Statements Are Not Actionable...............7

    II.    PLAINTIFF'S SCIENTER ALLEGATIONS SUPPORT A
          COMPETING NONFRAUDULENT INFERENCE............................9

         A.    Plaintiff's Reliance On Bankruptcy Filings Does Not
              Establish Contemporaneous Knowledge ...................................9

         B.    The Core Operations Doctrine Is Inapplicable ........................10

         C.    E&Y's Resignation Does Not Support An Inference Of
              Scienter....................................................................................11

          D.    Plaintiff's Remaining Allegations Fail To Plead Scienter.......12

    III.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION ....................14

    IV.    PLAINTIFF DOES NOT ALLEGE CULPABLE
          PARTICIPATION.............................................................................15

CONCLUSION ....................................................................................................15

CERTIFICATE OF SERVICE ...........................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anadigics, Inc., Sec. Litig.*,
  2011 WL 4594845 (D.N.J. Sept. 30, 2011) ........................................................5

*Anderson v. McGrath*,
  2012 WL 5381406 (D. Ariz. Nov. 1, 2012) .......................................................4

*In re Ascena Retail Grp., Inc. Sec. Litig.*,
  2022 WL 2314890 (D.N.J. June 28, 2022) .........................................................7

*In re Atlas Mining Co., Sec. Litig.*,
  670 F. Supp. 2d 1128 (D. Idaho 2009) ..............................................................2

*In re Aurora Cannabis Inc. Sec. Litig.*,
  2023 WL 5508831 (D.N.J. Aug. 24, 2023) .......................................................15

*In re Campbell Soup Co. Sec. Litig.*,
  145 F. Supp. 2d 574 (D.N.J. 2001) ...................................................................11

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
  2018 WL 2382600 (S.D.N.Y. May 24, 2018) ....................................................8

*In re Coinbase Global, Inc. Sec. Litig.*,
  2024 WL 4053009 (D.N.J. Sept. 5, 2024) ..........................................................7

*Curran v. Freshpet, Inc.*,
  2018 WL 394878 (D.N.J. Jan. 12, 2018) ............................................................5

*Dudley v. Haub*,
  2013 WL 1845519 (D.N.J. Apr. 30, 2013) .........................................................9

*Edwards v. McDermott Int'l, Inc.*,
  2022 WL 3927828 (S.D. Tex. Aug. 30, 2022) ...................................................4

*EnSource Invs. LLC v. Tatham*,
  2017 WL 10648061 (S.D. Cal. Mar. 9, 2017) ....................................................4

*In re Enzymotec Sec. Litig.*,
  2015 WL 8784065 (D.N.J. Dec. 15, 2015)......................................................7, 11

*Epstein v. World Acceptance Corp.*,
    203 F. Supp. 3d 655 (D.S.C. 2016) .......................................................................11

*Espinoza v. Whiting*,
    8 F. Supp. 3d 1142 (E.D. Mo. 2014) ......................................................................4

*In re Garrett Motion Inc. Sec. Litig.*,
    2023 WL 2744029 (S.D.N.Y. Mar. 31, 2023).........................................................4

*In re Genworth Fin. Inc. Sec. Litig.*,
    103 F. Supp. 3d 759 (E.D. Va. 2015) ......................................................................8

*Hall v. Johnson & Johnson*,
    2019 WL 7207491 (D.N.J. Dec. 27, 2019)............................................................15

*In re Hertz Global Holdings, Inc. Sec. Litig.*,
    2017 WL 1536223 (D.N.J. Apr. 27, 2017)............................................................12

*Hoey v. Insmed Inc.*,
    2018 WL 902266 (D.N.J. Feb. 15, 2018) ................................................................6

*Hunt v. Bloom Energy Corp.*,
    2021 WL 4461171 (N.D. Cal. Sept. 29, 2021)........................................................7

*Hutchinson v. Perez*,
    2012 WL 5451258 (S.D.N.Y. Nov. 8, 2012)..........................................................10

*Inst. Invs. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) .................................................................................10

*Jun v. 500.com Ltd.*,
    2021 WL 4260644 (E.D.N.Y. Sept. 20, 2021) ......................................................13

*Laasko v. Endo Int'l, PLC*,
    2022 WL 3444038 (D.N.J. Aug. 17, 2022) ...........................................................15

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) ................................................................................15

*Martin v. GNC Holdings, Inc.*,
    757 F. App'x 151 (3d Cir. 2018) ..........................................................................10

iii

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
  2012 WL 3779309 (D.N.J. Aug. 29, 2012) ........................................................15

*In re Merck & Co., Inc. Sec. Derivative & ERISA Litig.*,
  2015 WL 2250472 (D.N.J. May 13, 2015)............................................................8

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan &
  Plymouth Cnty. Ret. Ass'n v. MDC Partners, Inc.*,
  2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016) ....................................................13

*In re Novo Nordisk Sec. Litig.*,
  2018 WL 3913912 (D.N.J. Aug. 16, 2018) .........................................................14

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension
  Fund*,
  575 U.S. 175 (2015)...............................................................................................7

*In re Pareteum Sec. Litig.*,
  2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021).....................................................14

*Pure Earth, Inc. v. Call*,
  531 F. App'x 256 (3d Cir. 2013) .........................................................................14

*Roofer's Pension Fund v. Papa*,
  2018 WL 3601229 (D.N.J. July 27, 2018) ............................................................6

*Set Cap. LLC v. Credit Suisse Grp. AG*,
  996 F.3d 64 (2d Cir. 2021) ..................................................................................12

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006) ................................................................................13

*In re Synchronoss Techs., Inc. Sec. Litig.*,
  2019 WL 2849933 (D.N.J. July 2, 2019) ............................................................14

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings,
  Inc.*,
  83 F.4th 514 (6th Cir. 2023) ...............................................................................13

*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
  2011 WL 1253250 (D. Ariz. Mar. 31, 2011).........................................................2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)......................................................................................9

*Univ. Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*,
    176 F. Supp. 3d 387 (D. Del. 2016)..........................................................10

*Vanderhoef v. China Auto Logistics Inc.*,
    2021 WL 3260849 (D.N.J. July 30, 2021) .................................................11

*In re Vivendi Univ., S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011) ........................................................10

*Williams v. Globus Med. Inc.*,
    869 F.3d 235 (3d Cir. 2017) ........................................................................6

*Wilson v. Bernstock*,
    195 F. Supp. 2d 619 (D.N.J. 2002)............................................................11

*Wu v. GSX Techedu Inc.*,
    2024 WL 3163219 (D.N.J. June 25, 2024)..................................................11

*Zwick Partners, LP v. Quorum Health Corp.*,
    2018 WL 2933406 (M.D. Tenn. Apr. 19, 2018) ...........................................8

## Statutes

Private Securities Litigation Reform Act.......................................................1, 5, 6

## Other Authorities

17 C.F.R. § 229.303(a)........................................................................................5

Federal Rule of Civil Procedure 9(b).................................................................1

## INTRODUCTION

Defendants' Opening Brief demonstrated that the Amended Complaint fell well short of clearing the high hurdles required by the Private Securities Litigation Reform Act ("PSLRA) and Federal Rule of Civil Procedure 9(b) to plead a claim for securities fraud.  Rather than grapple with the deficiencies in the Amended Complaint, Plaintiff falls back on the facts that Party City filed for bankruptcy and thereafter restated its financial statements for the period immediately prior to the bankruptcy.  While those events reflect the financial difficulties Party City faced, without more they are insufficient to allege that the Company's senior officers made intentional misstatements or engaged in fraud.  And Plaintiff has nothing more.

The public filings on which Plaintiff relies in fact tell a very different story than Plaintiff suggests.  Party City repeatedly warned investors that its business was negatively impacted by various economic factors, including disruptions caused by COVID-19, supply chains, labor shortages, helium availability, and more.  In response to these issues, the Company, assisted by world-class advisors, was actively seeking to extend and increase its credit lines, identify new investors, and develop strategic alternatives to restructuring.  Ultimately, the Company's board determined that a Chapter 11 bankruptcy restructuring was the best option for the Company.  Several months later, following a disagreement with its auditor, the Company restated its financial results for the period immediately prior to bankruptcy to add a

1

going concern qualification.  Contrary to Plaintiff's suggestion, none of the underlying financial headwinds or liquidity needs was concealed from investors. And the public filings and Amended Complaint acknowledge that Defendants worked tirelessly to the end to avoid a liquidity crisis and bankruptcy.

## **ARGUMENT**

### I. PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MATERIAL MISSTATEMENT OR OMISSION

Faced with numerous pleading deficiencies, Plaintiff argues that the Restatement establishes Defendants made false statements.  Opp'n at 10.  But the Restatement alone "cannot cure" Plaintiff's "failure to plead falsity with particularity." *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 2011 WL 1253250, at *23 (D. Ariz. Mar. 31, 2011) ("It is not enough to simply allege that a given statement is false and misleading and then baldly rely upon a restatement."); *In re Atlas Mining Co., Sec. Litig.*, 670 F. Supp. 2d 1128, 1133 (D. Idaho 2009).  Although Party City issued the Restatement, none of the alleged misstatements is actionable.  And as detailed in Defendants' Opening Brief ("Mot."), Plaintiff's allegations regarding internal control weaknesses are entirely conclusory and offer no particularized allegations beyond the Restatement itself.  Mot. at 23.

### A. Defendants' Statements Concerning Liquidity Are Not False

None of the alleged misstatements concerning liquidity is false because each accurately reflected efforts to improve liquidity.  Plaintiff highlights Defendant

Vogensen's statement in the Q3 2022 earnings call about "improving our liquidity": "as we look at our liquidity, we have a number of levers . . . that we continue to pull. . . . And so we do have a lot of levers out there, and continue to manage those levers proactively."  AC ¶¶ 171, 173; Opp'n at 11.  That was entirely true.  Party City's public filings disclosed that it was actively utilizing available cash and borrowings.  Ex. 6 at 26 (Q2 "cash and cash equivalents of $39.2 million," "available borrowings of $156.7 million"); Ex. 7 at 33 (Q3 "cash and cash equivalents of $29.8 million," "available borrowings of $91.7 million").  And loans and notes payables nearly doubled from Q2 to Q3 2022.  Ex. 6 at 26 ($231.9 million); Ex. 7 at 33 ($442.9 million).  The Company also implemented a reduction in force and sought to "increase[e] operational efficiencies" during the third quarter.  Ex. 7 at 23.

Additionally, the bankruptcy declarations Plaintiff points to state that Moelis contacted more than 20 investors to explore "out-of-court financial alternatives." Ex. 9 ¶ 13.  Through Q4 2022, Moelis "continue[d] outreach to a range of capital providers and evaluate[d] financing alternatives."  *Id.*  ¶ 9.  Even the decision to "pivot towards an in-court balance sheet restructuring in November 2022" did not make a crisis certain.  *Id.* ¶ 15.  Rather, at that point a Restructuring Committee was created "to evaluate the merits of potential transactions."  Ex. 10 ¶ 63.

At bottom, Plaintiff argues that liquidity statements were false only because Defendants did not disclose financing efforts or bankruptcy preparations.  Opp'n at

3

11; AC ¶¶ 147-75.   As Defendants' Opening Brief showed, however, those statements were not false or misleading because there is no obligation to disclose a potential bankruptcy that may never occur.  *See In re Garrett Motion Inc. Sec. Litig.*, 2023 WL 2744029, at *17-18 (S.D.N.Y. Mar. 31, 2023) (statements about liquidity and short-term needs were not false or misleading despite steps "taken to explore a restructuring").  "[P]ublic policy" dictates that Party City was entitled "to make careful deliberations about its future, free from any obligation to disclose potential bankruptcy."  *Espinoza v. Whiting*, 8 F. Supp. 3d 1142, 1154 (E.D. Mo. 2014) (citation omitted).  That is particularly true where Defendants never represented that Party City would *not* file for bankruptcy.  *See Edwards v. McDermott Int'l, Inc.*, 2022 WL 3927828, at *5 (S.D. Tex. Aug. 30, 2022) ("[T]hey never once promised investors that a bankruptcy filing was off the table. . . . [A] filing always remains a possibility in the event its efforts to cure a severe liquidity crisis do not bear fruit.").[1]

Moreover, Plaintiff's argument that Item 303 requires disclosure of a potential bankruptcy is both foreclosed by Supreme Court precedent and factually meritless.

---

[1] By contrast, in the cases on which Plaintiff relies, the defendants knew bankruptcy was a foregone conclusion.  *See, e.g.*, *EnSource Invs. LLC v. Tatham*, 2017 WL 10648061, at *5 (S.D. Cal. Mar. 9, 2017) (even when questioned about financial strength, defendants never disclosed that company had "less than $10,000 and sometimes . . . a negative account balance" and "was on the verge of bankruptcy"); *Anderson v. McGrath*, 2012 WL 5381406, at *5 (D. Ariz. Nov. 1, 2012) (officers "were told that the company would not qualify for venture capital without first filing for bankruptcy"); *id.* (noting consideration of "bankruptcy does not mean that approval of a securities offering by Defendants was a fraudulent scheme").

Defendants met their disclosure obligations by identifying the economic "trends" and "demands" that could impact liquidity.  17 C.F.R. § 229.303(a).  Mot. at 17.

### B.    Defendants' Forward-Looking Liquidity Statements Are Protected By The Safe Harbor

Defendants' statements about liquidity are also protected by the PSLRA safe harbor because they (1) are forward-looking, (2) are accompanied by robust disclosures about issues impacting Party City's liquidity, and (3) did not concern risks that had already materialized.  *See* Mot. at 17-19.

*First*, Plaintiff is wrong that Defendants' statements were mixed statements of current fact.  Opp'n at 15.  Defendants' statements of belief and expectation are, by definition, predictive "statement[s] of future economic performance."  *In re Anadigics, Inc., Sec. Litig.*, 2011 WL 4594845, at *21 (D.N.J. Sept. 30, 2011), *aff'd* 484 F. App'x 742 (3d Cir. 2012); AC ¶¶ 147, 151, 157.  Party City's SEC filings identify forward-looking statements by terms such as "believes" and "expects," Ex. 7 at 19, placing those statements squarely within the safe harbor's protection, *In re Anadgicis*, 2011 WL 4594845, at *21 ("we believe" within safe harbor).  The liquidity projections did not "encompass representations of present fact."  *Cf. Curran v. Freshpet, Inc.*, 2018 WL 394878, at *4 (D.N.J. Jan. 12, 2018) ("store count is obviously growing" and "we have enhanced our strategic manufacturing capabilities" were examples of statements "encompass[ing] representations of present fact" and "not subject to the PSLRA safe harbor"); *Roofer's Pension Fund*

5

*v. Papa*, 2018 WL 3601229, at \*15 (D.N.J. July 27, 2018) ("we are in line with our going online integration process" was a "statement[] of present fact" (cleaned up)).

*Second*, the warnings accompanying liquidity statements tied liquidity to issues like supply chain disruptions and labor shortages caused by the COVID-19 pandemic; freight, shipping, and transportation costs; and helium shortages that uniquely affect Party City's business. Ex. 4 at 11-12; Ex. 5 at 21; Ex. 6 at 29; Ex. 7 at 23, 38. *See, e.g.*, *Hoey v. Insmed Inc.*, 2018 WL 902266, at \*20 (D.N.J. Feb. 15, 2018) ("Insmed's cautionary language is specifically tailored to the concerns which impacted the regulatory approval process. . . . representations in this context are forward-looking statements under the PSLRA."). It is unsurprising that these risks were repeated and reincorporated from the 2021 10-K, since they involved financial conditions that persisted and continued to impact Party City's business.

*Third*, the disclosures were appropriate because the risk of inadequate liquidity had not yet materialized. When the alleged misstatements were made, Party City had not yet experienced a liquidity crisis and was actively working to prevent one. *See supra* § I.A; *Williams v. Globus Med. Inc.*, 869 F.3d 235, 243 (3d Cir. 2017) (warning of risk of adverse effect on sales due to distributor ceasing business only materialized when sales were adversely affected). Far from the generalized, vague warnings in the cases cited by Plaintiff, the robust warnings about current factors that could negatively impact Party City's liquidity provided investors

meaningful cautionary language.  *Compare* Mot. at 5-7, *with In re Coinbase Global, Inc. Sec. Litig.*, 2024 WL 4053009, at \*13 n.19 (D.N.J. Sept. 5, 2024) (warnings of "regulatory uncertainty" insufficient when SEC actively investigating), *and In re Enzymotec Sec. Litig.*, 2015 WL 8784065, at \*11, 22 (D.N.J. Dec. 15, 2015) (warnings of "significant and increasing government regulations" in China not enough in face of actual changes to Chinese infant formula regulation).

### C.   Defendants' Opinion Statements Are Not Actionable

Defendants' remaining statements are all opinions under *Omnicare*. Importantly, Defendants do not lose the protection afforded statements of opinion simply because Party City restated its goodwill projection.  Goodwill evaluations are statements of opinion because the GAAP analysis "require[s] the exercise of subjective judgment."  *In re Ascena Retail Grp., Inc. Sec. Litig.*, 2022 WL 2314890, at \*7 (D.N.J. June 28, 2022) (collecting cases).  In turn, "opinion statements can still be wrong such that a company may seek to correct them. This does not, however, transform the opinion statement into an objective statement of fact."  *Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at \*8 (N.D. Cal. Sept. 29, 2021); *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) (an "opinion is not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong").

7

As detailed above and in Defendants' Opening Brief, the goodwill projections were not based on false information because the Company was actively working to improve its liquidity position in the face of economic headwinds impacting the business. And here, unlike in the cases relied on by Plaintiff, the Amended Complaint does not allege that Defendants did not believe their goodwill statements at the time they were made. *Contra Zwick Partners, LP v. Quorum Health Corp.*, 2018 WL 2933406, at \*6 (M.D. Tenn. Apr. 19, 2018) ("red flags" revealed that decisions not to test for or take impairments "were fraudulent"); *In re Genworth Fin. Inc. Sec. Litig.*, 103 F. Supp. 3d 759, 779 (E.D. Va. 2015) (defendants represented they "conducted a broad, intensive review of 'all aspects' of the business" on which they based opinions, but had not conducted a review since 2012 based on 2010 data); *see also In re Merck & Co., Inc. Sec. Derivative & ERISA Litig.*, 2015 WL 2250472, at \*20-21 (D.N.J. May 13, 2015) (summary judgment record revealed defendants "knew that it did not 'fairly align' with other information in their possession").[2]

Plaintiff's remaining cases are inapposite because they concern the decision not to record an impairment, despite the defendants' knowledge of facts that counseled in favor of an impairment. *See In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600, at \*7 (S.D.N.Y. May 24, 2018) (no goodwill write-down

---

[2] For the same reasons, Defendants' statements of opinion embedded in the SOX statements are not actionable. *See* Mot. at 24.

8

"despite known delays, cost overruns, growing liability disputes," and "contemplation and eventual execution of a quitclaim deed to relieve itself of liabilities"); *Dudley v. Haub*, 2013 WL 1845519, at \*11 (D.N.J. Apr. 30, 2013) (no impairment recorded despite experiencing all factors considered for an impairment).

## II.   PLAINTIFF'S SCIENTER ALLEGATIONS SUPPORT A COMPETING NONFRAUDULENT INFERENCE

In an attempt to dodge the Amended Complaint's lack of viable scienter theories, Plaintiff argues that the Court should analyze the individually deficient allegations holistically.  Opp'n at 27.  Even viewed together, Plaintiff's allegations do not give rise to a "strong inference" of scienter that is "at least as compelling as any opposing inference of non-fraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  Rather, the more compelling inference to be drawn from Plaintiff's allegations is that, in response to a difficult economic climate, Party City hired leading experts to identify and pursue solutions, but ultimately, bankruptcy was the best option, and subsequently, the Restatement was necessary.

### A.   Plaintiff's Reliance On Bankruptcy Filings Does Not Establish Contemporaneous Knowledge

Plaintiff relies on declarations filed in the Party City bankruptcy to attempt to rebut fraud-by-hindsight arguments.  But the declarations on which Plaintiff relies, made months after statements at issue, are *not* contemporaneous and thus cannot show Defendants had contemporaneous knowledge that their statements were

9

supposedly false or misleading.  Mot. at 25-27.  At most, the declarations show that Party City had "on going liquidity tightness," was identifying potential lenders, and had retained experts to advise on the best path forward—of which bankruptcy was one potential path.  AC ¶¶ 60-68; *supra* § I.A.  "[T]he more compelling 'plausible, nonculpable' explanation is that Defendants failed to avoid [Party City's] bankruptcy in [January 2023] despite their best efforts."  *Hutchinson v. Perez*, 2012 WL 5451258, at *7 (S.D.N.Y. Nov. 8, 2012).

Where bankruptcy statements did not reveal a "truth," the ten weeks between the Q3 2022 10-Q and bankruptcy filing does not support a strong inference of scienter.  Opp'n at 22.  And here, Party City's 8-K was filed nearly a *year* later, and the Restatement was not made for *year and a half*.  Ex. 3; Ex. 1.  *But see Inst. Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 272 (3d Cir. 2009) (20 days between).[3]

### B.    The Core Operations Doctrine Is Inapplicable

Plaintiff does not dispute that the core operations doctrine does not apply "absent some additional allegation of specific information conveyed to management and related to the fraud."  *Martin v. GNC Holdings, Inc.*, 757 F. App'x 151, 155 (3d

---

[3] To be sure, some cases suggest temporal proximity *can* add to scienter, but Plaintiff pleads no other facts that support such an inference here.  *Cf. Univ. Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 395-96 (D. Del. 2016) (describing "powerful motives to conceal the truth"); *In re Vivendi Univ., S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 554 (S.D.N.Y. 2011) (jury could have relied on company admissions concerning liquidity crisis).

Cir. 2018).  Plaintiff fails to plead such allegations.  *See supra* §§ I.A, II.A.

More fundamentally, Plaintiff cannot plead that borrowing and liquidity were critical or central to Company operations.  Opp'n at 24-25; *see Wu v. GSX Techedu Inc.*, 2024 WL 3163219, at *29 (D.N.J. June 25, 2024) (revenue and student enrollment not core); *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001) ("U.S. soup sales are indisputably the bread and butter of Campbell's business"); *In re Enzymotec*, 2015 WL 8784065, at *18 (formula and its ingredients went to core business).  The core operations doctrine is therefore inapplicable.

### C.    E&Y's Resignation Does Not Support An Inference Of Scienter

Plaintiff's cases acknowledge that an auditor's resignation cannot "alone" support an inference of scienter.  *See Vanderhoef v. China Auto Logistics Inc.*, 2021 WL 3260849, at *4 (D.N.J. July 30, 2021) (resignations plus personal benefit and obstruction of investigations); *Epstein v. World Acceptance Corp.*, 203 F. Supp. 3d 655, 669 (D.S.C. 2016) (resignation was one of eight factors).  And here, the circumstances of E&Y's resignation do not amount to recklessness required to plead scienter.  *Contra* Opp'n at 23.  Indeed, recklessness is not "'even inexcusable negligence, but an *extreme departure from the standards of ordinary care*' and 'which presents a danger of misleading buyers or sellers that is *either known to the defendant or is so obvious that the actor must have been aware of it*.'"  *Wilson v. Bernstock*, 195 F. Supp. 2d 619, 638 (D.N.J. 2002) (emphasis in original) (citation

11

omitted).  Far from showing an "extreme departure from the standards of ordinary care," E&Y's resignation letter reflects a mere disagreement with Party City's management.  The 8-K explains that "[p]rior to EY's abrupt resignation, the Company was engaged in ongoing discussions with EY" and had "shared proposed disclosure [of the material weakness] in a draft Form 10-K filing."  Mot. at 31 n.5.; Ex. 14 at Item 4.01.  Such facts do not add to scienter.

The most plausible inference to be drawn from the investigations following E&Y's resignation is that Defendants did not act with scienter.  The Amended Complaint does not allege the SEC investigation resulted in an enforcement action, let alone finding of misconduct.  *See In re Hertz Global Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *17 n.6 (D.N.J. Apr. 27, 2017) (no scienter for SEC investigation without charges or findings of wrongdoing).  The Audit Committee's proactive investigation also does not bolster Plaintiff's deficient allegations.  *See* Mot. at 34.  *Cf. Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 80-81 (2d Cir. 2021) (SEC investigation supported scienter with other compelling allegations).

### D.    Plaintiff's Remaining Allegations Fail To Plead Scienter.

Plaintiff next cobbles together a kitchen-sink of scienter allegations.  None of these gives rise to an inference of scienter.[4]

---

[4] Plaintiff does not challenge and thus waives arguments related to: internal controls, personal stock holdings, and incentive-based stock awards.  Mot. at 28-29, 35.

*First*, Plaintiff focuses on the fact that Defendants Weston and Vogensen sold 20% and 24% of their shares, respectively.  But Plaintiff ignores that *all* of Defendants' sales were "for payment of tax liability."  Ex. 16.  The purpose of the sales is not disputed, Opp'n at 25 n.15, nor does Plaintiff dispute that on a motion to dismiss "the disposition of shares to pay taxes [does] not demonstrate a defendant's motive to defraud," *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cnty. Ret. Ass'n v. MDC Partners, Inc.*, 2016 WL 5794774, at *20 (S.D.N.Y. Sept. 30, 2016).  *Contra In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 278 (3d Cir. 2006) (sales "were not normal or routine [and] the profits from the trades were substantial in comparison to their overall compensation").

*Second*, neither Defendants' roles as CEO and CFO nor their SOX certifications support scienter. Courts routinely hold that "[s]cienter is not to be inferred simply by virtue of [defendants'] senior positions within [a company]." *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 531 (6th Cir. 2023).  The fact that Defendants signed SOX certifications lends no support for scienter where Plaintiff cannot show that Defendants at least "recklessly disregarded inaccuracies contained in an SEC filing."  Opp'n at 25.

*Third*, officers' resignations following a corporate restructuring like bankruptcy are unsurprising and do not give rise to an inference of scienter.  *See Jun v. 500.com Ltd.*, 2021 WL 4260644, at *2 (E.D.N.Y. Sept. 20, 2021) ("[T]here are

13

many plausible economic, cultural and practical reasons for such a departure that do not involve knowledge of the scheme."). *Contra In re Novo Nordisk Sec. Litig.*, 2018 WL 3913912, at *2 (D.N.J. Aug. 16, 2018) (alleging defendants were fired). Indeed, Defendants' resignations here were a few months after the bankruptcy and significantly predated the Restatement. *Cf. In re Pareteum Sec. Litig.*, 2021 WL 3540779, at *17 (S.D.N.Y. Aug. 11, 2021) (resignations weeks after restatement announcement). Proximity to the investigations is likewise unavailing for pleading scienter where Plaintiff does not allege findings of wrongdoing from either.

*Finally*, a restatement is not itself indicative of scienter. *In re Synchronoss Techs., Inc. Sec. Litig.*, 2019 WL 2849933, at *14 (D.N.J. July 2, 2019).

## III.    <u>PLAINTIFF FAILS TO PLEAD LOSS CAUSATION</u>

The Third Circuit "distinguish[es] between *typical* and *non-typical* 10(b) cases" for loss causation. *Pure Earth, Inc. v. Call*, 531 F. App'x 256, 260 (3d Cir. 2013) (emphasis in original) (citing *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425 (3d Cir. 2007)). While Plaintiff relies on non-typical case law, this is a typical case, in which "the plaintiff must show that his losses are related specifically to the market's discovery of the misrepresentation and the corresponding decrease in price due to that misrepresentation." *Id.* at 260. Plaintiff cannot do so where each topic was already disclosed. Mot. at 38-39. Nor does Plaintiff attempt to show the stock drop was caused by the disclosure of misstatements or that its losses were caused by

14

the drop itself.  *See Hall v. Johnson & Johnson*, 2019 WL 7207491, at *27-28 (D.N.J. Dec. 27, 2019).[5]

## IV.    PLAINTIFF DOES NOT ALLEGE CULPABLE PARTICIPATION

Putting aside the intra-Circuit split regarding culpable participation, Plaintiff fails to allege any facts that Defendant's participation "was deliberate and done intentionally to further the fraud."  *See In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 2012 WL 3779309, at *9 (D.N.J. Aug. 29, 2012).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Amended Complaint with prejudice.[6]

Dated: October 30, 2024                    Respectfully submitted,

*/s/ Carla G. Graff*

---

[5] To the extent Plaintiff pleads materialization of risk, it cannot allege that the bankruptcy and surrounding events "reveal[ed] that an earlier statement was false." *In re Aurora Cannabis Inc. Sec. Litig.*, 2023 WL 5508831, at *4 (D.N.J. Aug. 24, 2023).  From Q3 2021 to Q3 2022 Party City reported a substantial decrease in comprehensive income attributable to shareholders and near-double increase in loans and notes payable.  Ex. 17 at 3-4.  And weeks preceding bankruptcy, "the market became increasingly aware of . . . a DIP financing proposal."  Ex. 9 ¶ 21. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) (clarifying pleading burden where "substantial indicia of the risk that materialized are unambiguously apparent on the face of the disclosures alleged to conceal the very same risk").

[6] Plaintiff does not explain how amendment would cure its pleading deficiencies. Amendment would be futile and prejudicial where Plaintiff had ample time (ten months between the original and amended complaints) to investigate the allegations. *See Laasko v. Endo Int'l, PLC*, 2022 WL 3444038, at *10 (D.N.J. Aug. 17, 2022).

15

Andrew J. Levander (*pro hac vice*)
Neil A. Steiner (*pro hac vice*)
David A. Kotler
Angela M. Liu (*pro hac vice*)
andrew.levander@dechert.com
neil.steiner@dechert.com
david.kotler@dechert.com
angela.liu@dechert.com
DECHERT LLP
Three Bryant Park
1095 Sixth Avenue
New York, NY 10036
Tel: (212) 698-3500

Carla G. Graff
Stormie B. Mauck (*pro hac vice*)
carla.graff@dechert.com
stormie.mauck@dechert.com
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-2513

*Attorneys for Defendants Bradley M.
Weston and Todd E. Vogensen*

16

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2024, I served a true and correct copy of the foregoing upon all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Carla G. Graff
Carla G. Graff

17